In the Matter of PHILLIPS CONSTRUCTION COMPANY, INC., Bankrupt.

Edward LIMPERIS, Trustee,
Plaintiff-Appellant,

v.

Thomas MARTINECK and Catherine Martineck et al., including Village of Carpentersville, a Municipal Corporation, Defendants-Appellees.

No. 76–1879.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 17, 1977.
Decided July 14, 1978.

Jeffrey D. Warren, Chicago, Ill., for plaintiff-appellant.

Richard W. Husted, Elgin, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, CASTLE, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

FAIRCHILD, Chief Judge.

Appellant Edward Limperis (hereinafter referred to as "the Trustee"), as trustee in bankruptcy of Phillips Construction Company, Inc. (hereinafter "the Bankrupt"), appeals from a judgment of the district court which reversed an order of the Bankruptcy Court directing the Village of Carpentersville (hereinafter "the Village") to permit the construction and occupancy of homes upon eleven residential lots which are assets of the bankrupt estate.

The Bankrupt was in the business of real estate development and construction. As one of its undertakings, the Bankrupt developed the Rivers End Subdivision in Carpentersville, Illinois. The subdivision contains approximately 200 homesites. Prior to bankruptcy, homes had been completed and occupied on approximately 199 of the homesites. In order to record the final plot under the Village ordinance, the Bankrupt proposed plans for and agreed to install extensive public improvements in the subdivision including streets, sidewalks, driveways, and storm and sanitary sewers for use by all the homes in the subdivision. Many of these improvements remain uncompleted.[1]

The Trustee, pursuant to his desire to liquidate the Bankrupt's estate, has attempted to sell the eleven lots which are presently unoccupied.[2] Because of the unfinished state of the public improvements in the subdivision, however, the Village refused to issue building or occupancy permits which are necessary for construction or occupancy of any homes on the eleven lots.[3] As a result of this action by the Village, the eleven lots have become unmarketable and therefore the Trustee has been unable to sell the lots to any prospective purchasers.

The Village contends that its actions were authorized by its ordinance governing subdivisions and constituted a reasonable exercise of its police power to protect the health and welfare of its citizens. The Village further asserts that it can withhold permits from the Trustee because the Trustee has no greater rights than those of the Bankrupt or any other owner of lots.

The Trustee, on the other hand, contends that the actions of the Village were not authorized by the Village ordinance. The Trustee also argues that the actions of the Village frustrated his right to liquidate the Bankrupt's estate guaranteed under the Bankruptcy Act and are therefore invalid under the Supremacy Clause, U.S.Const., Art. 6, Clause 2. Finally, the Trustee asserts that the refusal of the Village to issue permits conflicts with section 70(b) of the Bankruptcy Act, 11 U.S.C. § 110(b), which gives the Trustee the power to reject executory contracts.

---

1. Since this case is presently still at the pleading stage, there is no evidentiary record to determine the extent to which improvements remain uncompleted.

2. The eleven lots owned by the Trustee are scattered in the eastern portion of the subdivision. The lots have apparently been neglected and victimized by vandals and therefore any improvements which had been made on the lots have deteriorated.

3. Permits have been issued on the 190 other lots which are presently occupied. Permits also were issued on the eleven lots presently owned by the Trustee but these have expired and the Village has refused to reissue them.

After hearing oral argument, the Bankruptcy Court entered an order directing the Village to permit the Trustee and his purchasers to enter upon the eleven lots, complete construction of residences, and thereafter permit occupancy of said residences. The district court then reversed the Bankruptcy Court and held in favor of the Village.

Because we agree with the Trustee that the withholding of permits was not authorized by the Village ordinance, we reverse the judgment of the district court.

## I. THE VALIDITY OF THE WITHHOLDING OF PERMITS UNDER THE VILLAGE ORDINANCE

The Village argues that it had the right to withhold permits under its police power to protect the health and welfare of its citizens as embodied in its ordinance governing subdivisions. The position of the Village is simply that it should not be compelled to accept eleven additional homes under the unsafe and undesirable conditions caused by the absence of required public improvements. Under this theory, the Trustee is in no different position than any other owner of lots within the subdivision.[4] To evaluate this claim by the Village, it is necessary to examine in some detail the provisions of the Village ordinance.[5]

Construction within the Village is governed by several sections of the Village ordinance. Section 2(a) of the ordinance prohibits the subdivision of land, the making of improvements to the land, and the laying of streets until a proposed plan has been approved by action of the Board of Trustees of the Village. Section 2(b) prohibits the sale or offer of sale of any lot, tract or parcel of land within any subdivision until such subdivision plans are officially approved by the Board of Trustees of the Village. Section 2(c) provides that no improvements such as sidewalks or drainage facilities shall be made until the plans for such improvements have been formally recommended by the Plan Commission and approved by the Board of Trustees.

Section 6 of the ordinance sets forth items which must accompany the recordation of the final plat of the subdivision. Subparagraph (a) of section 6 requires plans and specifications for public improvements previously approved by the Village engineer. Subparagraph (b) requires an agreement executed by the owner and subdivider to make, install and turn over to the Village the improvements provided for in the ordinance. Subparagraph (c) requires a bond in the amount of the estimate of the Village engineer of the cost of the installation of the improvements "with good and sufficient surety thereon," to be approved by the Board of Trustees, conditioned upon installation within two years of approval.

Section 7 of the ordinance lists the required land improvements which must be made. The section also provides that final plans of the subdivision must be accompanied by a written statement signed by the Village engineer certifying that the improvements described in the plans and specifications meet the minimum required by the ordinance.

The ordinance provides for several remedies in the event required public improvements are not completed. As stated above, subparagraph (c) of section 6 mandates that a developer put up a bond guaranteed by a surety in the amount of the estimate of the cost of all public improvements. In the present case, the Village for some inexplicable reason only required a bond of $20,000. While this bond is currently the subject of litigation in state courts, the amount of the bond is far less than the estimated cost of completing the unfurnished improvements. Subparagraph (b) of section 6 which requires a subdivider to enter into an agree-

---

4. The Village stated at oral argument that it would refuse to issue any permits to any owner of land under present conditions.

5. The legislative grant of municipal police powers is embodied in *Ill.Rev.Stat.* Ch. 24, Sec.

11-1-1. The only way in which this delegated power may be exercised is by the establishment of an ordinance. *E. g., Village of Altamont v. Baltimore and O. S. W. Ry. Co.,* 184 Ill. 47, 56 N.E. 340 (1900).

ment to build and install the improvements described in section 7 also appears to create a remedy for breach of contract against the developer in the event of nonperformance.[6] Additional protection against nonperformance is provided by section 8 which provides for inspection of public improvements by the Village engineer at the subdivider's expense. Finally, section 16(a) of the ordinance provides that the construction of any public improvement in violation of the provisions of the ordinance shall be fined between $25 and $250 with each day during which a violation occurs or continues constituting a separate offense.[7] Here, however, the Village had attempted to rely on the absence of required public improvements as a justification for the withholding of building and occupancy permits from the Trustee and any prospective purchasers. From the viewpoint of the Village, the Trustee is no more entitled to permits under the ordinance than the owner of any lot where required improvements have not been completed. The question is whether the withholding of permits is permissible under the ordinance.

Section 11 of the ordinance states that no occupancy permits shall be issued until required utility facilities have been installed and roadways providing access to the lots in question have been constructed or are in the course of construction. The Trustee has stipulated in its brief and at oral argument, however, that such improvements as sidewalks and driveways will be installed. The Trustee has not conceded that other improvements such as sewer connections or roadway access will be provided by purchasers. Since the Village never specifically cites section 11 as a ground for withholding permits, however, it has waived any claim of lack of utility facilities or road access.

Section 10 of the ordinance governs the issuance of building permits. Section 10 provides:

No building permit shall be issued by any governing officials for the construc-tion of any building, structure or improvement to the land or any lot within a subdivision as defined herein, which has been approved for platting or replatting, until all requirements of this Ordinance have been fully complied with.

Thus in contrast with section 11 which contains fairly specific language regulating the issuance of occupancy permits, section 10 contains broad general language, the interpretation of which is in dispute.

The Village contends that since public improvements remain uncompleted, all requirements of the ordinance have not been fully complied with and therefore it need not issue any building permits, to the Trustee or anybody else. The Trustee, on the other hand, argues that the Bankrupt fully complied with the steps set out in sections 6 and 7 of the ordinance which are necessary for recordation of the final plat. Failure to complete public improvements, according to the Trustee, does not constitute failure to comply with the ordinance, but failure to fulfill the agreement, section 6(b), and comply with the conditions of the bond which, under section 6(c), is designed to equal the cost of the required public improvements. Any failure to perform could be cured by recovering from the surety and applying the proceeds to the cost of completing the unfinished improvements. A claim could also be filed in the bankruptcy proceedings. Under the Trustee's interpretation of the ordinance, therefore, all requirements of the ordinance, in contrast with the conditions of the bond, have been fully complied with and the Village has no right to withhold building permits.

It is conceivable, as the Village claims, that the phrase "requirements of this Ordinance" in section 11 includes fulfillment of the section 6(b) agreement. But we agree with the Trustee's interpretation of the ordinance for several reasons. First, the Village construed the phrase in 190 out of 200 instances as not including fulfillment of

---

6. The Village stated at oral argument, however that no agreement was ever entered into in this case.

7. The record is silent on whether the Village ever attempted to rely on section 16(a).

**294**

section 6(b). Second, sale is permitted immediately after recording and it seems unlikely that building and occupancy were intended to be delayed until all improvements were completed. The bond, under section 6(c), permits a two-year delay after approval before improvements need be completed. Third, an occupancy permit is permitted before completion of an access road. In light of these provisions of the ordinance and past practice of the Village, we cannot agree with the Village that there can be no construction or occupancy until all improvements are completed.

Since the Village had no authority under the ordinance to withhold permits, we need not consider whether the actions of the Village conflict with any powers granted to the Trustee by the Bankruptcy Act and are therefore invalid under the Supremacy Clause.

The judgment appealed from is reversed with directions to reinstate and affirm the order of the Bankruptcy Court.